UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHLEEN A. FRANZ,                                                    **DECISION**
                                        Plaintiff,                        **and**
             v.                                                        **ORDER**[1]

NEW ENGLAND DISPOSAL TECHNOLOGIES, INC.,              **10-CV-201W(F)**
JONATHAN D. LEET,
                                        Defendants.
_____

APPEARANCES:            SPADAFORA & VERRASTRO, LLP
                        Attorneys for Plaintiff
                        JAMES P. VERRASTRO,
                        JOSEPH C. TODORO, of Counsel
                        2 Symphony Circle
                        Buffalo, New York  14201

                        SLIWA & LANE
                        Attorneys for Defendants
                        STANLEY J. SLIWA, of Counsel
                        840 Main-Seneca Building
                        237 Main Street
                        Buffalo, New York  14203


        In this personal injury action, Defendants move, Dkt. 29, to preclude the

testimony of Plaintiff's treating physicians ("Defendants' motion"), including Dr. Michael

Calabrese ("Dr. Calabrese"), Plaintiff's primary care physician who initially, on March 1,

2007, Dkt. 33 ¶ 22, examined and treated Plaintiff following a vehicular collision with

Defendants' tractor-trailer, that occurred on February 7, 2007 ("the collision").  Plaintiff

alleges the collision caused Plaintiff's injuries, Dkt. 33 ¶¶ 12, 22, particularly to Plaintiff's

---

[1] Motions to preclude are considered as non-dispositive for purposes of 28 U.S.C. § 636(b)(1)(A).  *See Arnold v. Krause, Inc.*, 233 F.R.D. 126, 130 (W.D.N.Y. 2005) (affirming magistrate judge's order granting plaintiff's motion to preclude expert testimony); *Dreyer v. Ryder Auto Carrier Group, Inc.*, 367 F.Supp.2d 413, 415 (W.D.N.Y. 2005) (considering motion to disqualify defendant's expert witness as non-dispositive).

spinal cervical areas, right shoulder, right hip and nervous system.  Dkt. 34 ¶ 14.  Based

on his then fourteen years of medical practice experience, the majority of cases

involving patients like Plaintiff, who also reportedly suffered traumatic injuries as a result

of auto collisions, Dr. Calabrese concluded that the collision caused Plaintiff's injuries.

Dkt. 34 ¶ 17.  According to Plaintiff the collision occurred when Plaintiff, then 43, while

driving her car on a ramp from a local interstate highway at about 45 mph was

sideswiped by Defendants' tractor-trailer near the driver's side rear bumper of Plaintiff's

vehicle causing Plaintiff's vehicle to fishtail as Plaintiff attempted to regain control,

resulting in Plaintiff's head striking the car's driver's side window as Plaintiff's body

moved from side-to-side inside the passenger compartment.  Dkt. 58 at 7-8.

Defendants dispute that Defendants' tractor-trailer sideswiped Plaintiff's car, maintaining

it was Plaintiff's car that improperly made contact with Defendants' tractor-trailer.  Dkt.

29 at 12 n. 1.

     Defendants contend that because Dr. Calabrese's opinion that Plaintiff suffered

cervical and thoracic spine strain and sprain, shoulder sprain and strain, and mild

limitations in the use of her upper-body muscular and nervous system as a result of the

collision is not grounded in the facts of the collision such as the lateral whip-lash

movements of Plaintiff's upper body inside Plaintiff's auto following impact, and that Dr.

Calabrese's failure to provide any basis, other than his experience in treating other auto

accident patients, to support his opinion that Plaintiff's injuries were caused by the

collision, renders Dr. Calabrese's causation opinion inadmissible under Fed.R.Evid. 702

("Rule 702") in that they are not based on sufficient facts and reliable scientific principles

and methods reliably applied as Rule 702 requires.  *See* Dkt. 30 at 6-7.  Defendants

also contend that Dr. Calabrese's assumptions that during the collision Plaintiff forcefully hit parts of Plaintiff's auto's interior such as the steering wheel and driver's side window conflicted with Plaintiff's deposition testimony and were therefore not based on the actual facts. Dkt. 30 at 7-8 (referencing Dkt. 29-9 at 6-7, 8 and 14). Defendant further contends Dr. Calabrese's opinion is based primarily on Plaintiff's statement to him during her initial visit on March 1, 2007, Dkt. 33 ¶ 22, that she experienced discomfort with her spine and shoulder only following the accident and that such a temporal relationship for Dr. Calabrese's opinion that the accident caused Plaintiff's injuries is speculative and therefore insufficient to avoid preclusion. Dkt. 30 at 8.

Defendants also assert the testimony of Dr. Graham Huckell and Dr. Cameron Huckell, board certified orthopedic surgeons, Dkt. 29-5 at 13; Dkt. 29-4 at 13, to whom Plaintiff was referred by Dr. Calabrese and who treated Plaintiff commencing in May 2007, that Plaintiff's shoulder and spinal injuries were caused by the collision, should be excluded for similar reasons. Dkt. 47 at 16. According to Dr. Graham Huckell, an April 18, 2013 X-ray indicated mild degenerative changes in Plaintiff's AC joint, which forms a connection between the bone and shoulder blade. Dkt. 45 at 5. Based on an April 19, 2007 MRI, Dr. Graham Huckell diagnosed that Plaintiff had suffered a bilateral shoulder injury including a labral[2] right shoulder tear and a rotator cuff tear, Dkt. 45 at 6-7, and that such injuries were caused by the collision. *Id.* at 7. A later, May 15, 2007 X-ray and June 18, 2007 MRI, of Plaintiff's left shoulder revealed a mild impingement of the

---

[2] Fibrocartilage or rubbery tissue attached to the rim of the shoulder socket that helps keep the ball of the joint in place. *See* Labrum, available at:http://c.merriam-webster.com/medlineplus/labrum, last visited June 16, 2016.

rotator cuff and, according to Dr. Graham Huckell, Plaintiff's bilateral shoulder complaints also resulted from the February 2007 collision.  Dkt. 45 at 10-11.  Based on the same April 2007 MRI, Dr. Cameron Huckell determined Plaintiff also suffered from several cervical disc protrusions, or slipped discs,[3] at C4-C5, C5-C6 and C6-C7 with the latter requiring surgery, Dkt. 47 at 18, which spinal injuries were in the opinion of Dr. Cameron Huckell caused by the collision.  *Id.*  Following an anterior discectomy of Plaintiff's C6-C7 in November 2007, performed by Dr. Cameron Huckell, and because of Plaintiff's continuing cervical pain, a second anterior cervical disc fusion on Plaintiff's C4-C5 and C5-C6 was performed two years later in October 2009 by Dr. Cameron Huckell and Dr. Zair Fishkin.  Dkt. 58 at 8-10.

Defendants further seek to preclude the testimony of Dr. Zair Fishkin who, like Drs. Graham and Cameron Huckell, is an orthopedic surgeon and also holds a B.S. in biomedical engineering as well as a Ph.D. in mechanical engineering.  Dkt. 58 at 1.  Dr. Fishkin's testimony includes his opinion that the fishtailing of Plaintiff's car at 40 mph caused by the collision resulted in the generation of G (gravity) forces, specifically G1-2.5, within the vehicle upon Plaintiff's upper body, including Plaintiff's head, sufficient to cause the C4-C5, C5-C6 and C6-C7 disc herniations as revealed in the May 19, 2007 MRI.  Dkt. 29-1 at 14; Dkt. 29-7 at 86; Dkt. 47 at 23; Dkt. 58 at 9.  Defendants maintain that the failure of Plaintiff's physicians to more thoroughly investigate and reconstruct the actual facts of the accident, such as examination of photographs of the damages to

---

[3]  A disc protrusion, more commonly referred as a slipped disc, STEDMAN'S MEDICAL DICTIONARY 28TH ED. at 548-49; SALEM HEALTH MAGILL'S MEDICAL GUIDE SIXTH ED. Vol. V at 2762-63 ("MAGILL'S MEDICAL GUIDE"), occurs "when the outer portion of intervertebral disk, called the annulus fibrosus, becomes weakened and allows the center portion, called the nucleus pulposus, to push out or leak through." MCGILL'S MEDICAL GUIDE at 2762.  In addition to aging and disc degeneration, such protrusions result from, *inter alia*, "twisting, or forceful trauma, which cause a disk to rupture."  *Id.* (underlining added).

the respective vehicles and relevant accident reports,  Dkt. 29 ¶ 14, the exact placement of Plaintiff's hands on the steering wheel, *id.* ¶ 15, the precise nature and extent of Plaintiff's movement within the car following impact, Dkt. 29 ¶ 15, the condition of the pavement at the collision scene and tires on Plaintiff's vehicle, and whether in fact Plaintiff hit her head on the driver's side car window during the fishtailing movement of Plaintiff's car following its impact with Defendant's tractor-trailer, demonstrates Dr. Calabrese, Drs. Graham and Cameron Huckell, and Dr. Fishkin's opinions that the collision caused Plaintiff's shoulder and spinal injuries as her physicians had diagnosed and opined are without a sufficient factual basis and unreliable for purposes of determining their admissibility under Rule 702.  *Id.* ¶ 18; 20.  Defendants' contentions are without merit.

In applying the "liberal admissibility standards" of Rule 702, *Amorgianos v. National Railroad Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002), the determination of whether proposed expert testimony is sufficiently reliable and relevant is committed to the "'sound discretion of the trial court.'"  *Lee Valley Tools, Ltd. v. Industrial Blade Co.*, 288 F.R.D. 254, 265 (W.D.N.Y. 2013) (quoting *American Ref-Fuel Co. of Niagara, LP v. Gensimore Trucking, Inc.*, 2008 WL 1995120, at *3 (W.D.N.Y. 2008) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999))).  Further, the inquiry of whether the expert's opinion includes sufficient indicia of reliability to carry out the "'gatekeeping' function" required by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) ("*Daubert*") "is fluid and will necessarily vary from case to case," *Amorgianos*, 303 F.3d at 266, (quoting *Daubert*, 509 U.S. at 597), but such opinions "'must be tied to the facts of a particular case.'"  *Id.* (quoting *Kumho*, 526 U.S. at 150).  The purpose of the court's

evaluation is to exclude expert opinion "that is connected to existing data only by the *ipse dixit* of the expert," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), and thereby exclude "junk science, while admitting reliable expert testimony that will assist the trier of fact." *Amorgianos*, 303 F.3d at 267.  Provided the basis for the expert testimony at issue is "'supported by good grounds,'" *id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745-46 (3rd Cir. 1994)), "'shaky but admissible evidence'" should be subject to attack by "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'"  *Amorgianos*, 303 F.3d at 267 (quoting *Daubert,* 509 U.S. at 596).

These standards apply to the question of whether a plaintiff's injuries were specifically caused by a defendant's negligence.  Amorgianos, 303 F.3d at 268. Although expert testimony "should be excluded where it is 'speculative or conjectural,' . . . arguments that the expert's assumptions 'are unfounded go to the weight, not the admissibility, of the testimony.'"  *Robinson v. Suffolk County Police Dep't.*, 544 Fed.Appx. 29, 32 (2d Cir. Nov. 14, 2013) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)) (internal citations and quotation marks omitted). Additionally, expert testimony is "not *per se* unreliable simply because it relies upon some unverified or inaccurate information provided by the expert's client."  *Lee Valley Tools, Ltd.* v. 288 F.R.D. at 267 (citing cases).  In this case, Defendants do not dispute that Plaintiff's physicians' opinion testimony is relevant or that the physicians are qualified to provide opinions regarding the nature and extent of Plaintiff's injuries.  The qualification of a witness and admissibility is for the court to decide by a preponderance of evidence.  Fed.R.Evid. 104(a).

First, although, as Defendants state, in accordance with Rule 702 courts are required to act as a "gatekeeper," *Daubert*, 509 U.S. at 589 n. 7, to prevent the admissibility of evidence asserted to be expert testimony based on so-called "junk science," courts consider the testimony of orthopedic surgeons, including that of treating orthopedic surgeons, with regard to the cause of spinal injuries occurring in connection with trauma, particularly that caused by collisions and falls, as meeting the Rule 702 conditions for admissibility including relevance and reliability.  *See Geary v.* Fancy, 2016 WL 1252768, at *3 (W.D.N.Y. Mar. 31, 2016) (treating orthopedic surgeon may testify as expert as to cause of plaintiff's spinal injury resulting from low-impact rear-end collision (citing cases)); *Corneli v. Adventure Racing Co., LLC.*, 2015 WL 4716285, at *4 (N.D.N.Y. July 10, 2015) (adopting July 10, 2015 report and recommendation in its entirety) (board certified orthopedic surgeon's testimony that plaintiff's spinal injuries resulted from rear-end collision between plaintiff's and defendants' go-carts, including plaintiff's spinal epidural hemorrhage causing plaintiff's permanent paraplegia, held admissible under Rule 702); *Michalowski v. CSX Trans., Inc.*, 387 F.Supp.2d 215, 217 (W.D.N.Y. 2005) ("*Michalowski*") (treating orthopedic physician, Dr. Cameron Huckell's, testimony and opinion that plaintiff's back injury was caused by effects of train collision on railroad track on which plaintiff was working causing plaintiff to be "thrown about" not subject to *Daubert* challenge under Rule 702 – as a board certified orthopedic surgeon familiar with plaintiff's relevant medical records, Dr. Huckell's opinion that collision caused plaintiff's injuries was reliable).  In *Michalowski*, the court held that Dr. Huckell's failure to engage in differential diagnosis or etiology[4] regarding the precise cause of

---

4   Differential etiology is a "scientific analysis (which requires listing possible causes, then eliminating all causes but one) [.]").  *McCullock v. H.P. Fuller Co.*, 61 F.3d 1038, 1044.

Plaintiff's injuries was not required for admissibility in the case as such methodology is more appropriately required in cases involving questions of causation based on alleged exposure to environmental toxins. *Michalowski*, 387 F.Supp.2d at 217 n. 4. *But see Cooper v. Marten Transport, Ltd.*, 539 Fed.Appx. 963, 966 (11 Cir. 2013) (district court did not abuse discretion in denying admissibility of plaintiff's treating physician and surgeon's opinion that plaintiff's low-speed collision with defendant's tractor-trailer caused plaintiff's back pain which required surgery where physicians' opinions failed to conclusively rule out plaintiff's known pre-existing back pain, degenerative back conditions, obesity, and prior auto accident as contributory factors); *Watson-Tobah v. Royal Moving Storage, Inc.*, 2014 WL 6865713, at **14-15 (S.D.N.Y. Dec. 5, 2014) (precluding plaintiff's retained expert and treating physicians, physiatrists, from opining plaintiff's low-back pain caused by low-impact collision between plaintiff's auto and defendant's tractor-trailer while waiting at a toll booth where plaintiff's expert witnesses failed to exclude possible causative effects of plaintiff's prior accidents and work-related injuries).

Similar holdings regarding the admissibility of opinion testimony of orthopedic surgeons have been reached in related circumstances involving plaintiffs treated by orthopedic surgeons for injuries to a plaintiff's musculoskeletal system based on readily apparent trauma such as repetitive motion of an extremity and a fall from an elevated position such as the collapse of a ladder. For example, in *Granfield v. CSX Trans., Inc.*, 597 F.3d 474, 485-86 (1st Cir. 2010) ("*Granfield*"), an FELA case, the court rejected a *Daubert* challenge to the testimony regarding causation by plaintiff's treating orthopedic surgeon who diagnosed plaintiff, a train engineer, as suffering from lateral epicondylitis,

or tennis elbow, caused by repetitive motion, *i.e.*, use, of plaintiff's left arm in operating the throttle of defendant's locomotive which plaintiff alleged was defectively designed and unsafe for use by a railroad employee such as an engineer like plaintiff. *Id.* at 477. In *Granfield*, defendant's argument that the doctor's opinion as to the cause of plaintiff's condition was not based on sufficient facts and a reliable scientific methodology, *id.*, at 485, was rejected by the court which determined that the doctor's lack of use of peer reviewed publications or any scientific methodology underlying his opinion as to the nature and cause of plaintiff's injury was not a prerequisite to admissibility given doctor's extensive experience in the diagnosis and treatment of plaintiff's condition. *See also McCullock*, 61 F.3d at 1042-43 (extensive experience of plaintiff's expert in question of a person's exposure to commercial glue fumes renders expert's opinion admissible under Rule 702 – questions of expert's knowledge of specifics of hazardous conditions associated with such exposure proper for cross-examination going to credibility and weight). In *Flowers v. Wal-Mart Stores, Inc.*, 2005 WL 2787101, at *6 (M.D.Ga. Oct. 27, 2005), plaintiff, as a result of a fall from a collapsed ladder, sustained trauma to plaintiff's lower lumbar spinal area. *Id.* The court rejected defendant's *Daubert* challenge to plaintiff's treating neurosurgeon's diagnosis and opinion that plaintiff's increased pain after the fall was caused by the new trauma of the fall and not prior accidents involving plaintiff. *Id.* at **6-7. Specifically, the court stated it was proper to "avoid unnecessary reliability proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted," *id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (internal quotation marks omitted)), finding that a treating physician's opinion that plaintiff's fall from a ladder to a concrete floor presented

such an ordinary case, one not requiring a detailed elaboration of the scientific methodology, as opposed to reliance on the physician's education and experience, upon which the physician's opinion was based. *Id.* at *7.  The court further rejected defendant's challenge based on the neurosurgeon's failure to consider and exclude alternative causes for plaintiff's condition, including a prior work-related injury and subsequent auto accident, as a required methodology finding such differential etiology consideration was not a prerequisite to admissibility under Rule 702, *id.* at *5; rather, the court found such failure to consider possible alternative causes for plaintiff's increased pain to be a fact question subject to cross-examination going to the weight of the opinion evidence provided by the plaintiff's physician.  *Id.* at *8.

Courts have also sustained the admissibility of testimony by biomechanical experts on the question of the effect upon particular parts of a plaintiff's body of forces generated during an alleged traumatic event, such as during a collision while in a moving vehicle, as capable of causing the plaintiff's specific injuries.  *See, e.g., Manlapig v. Jupiter*, 2016 WL 916425, at **2-3 (S.D.N.Y. Mar. 10, 2016) (denying plaintiff's motion to preclude defendant's biomechanical engineer's testimony concerning force of falling container from defendant's truck on plaintiff during impact with plaintiff's car); *Burke v. Transam Trucking, Inc.*, 617 F.Supp.2d 327, 332-333 (M.D.Pa. 2009) (motion to preclude plaintiff's biomechanical expert's testimony regarding forces applied to plaintiff upon impact during collision between plaintiff's pickup truck and defendant's tractor-trailer denied); *Morgan v. Girgis*, 2008 WL 2115250, at *3 (S.D.N.Y. May 16, 2008) (permitting defendant's biomechanical expert to testify on the nature and extent of forces upon human body created during the low-

speed impact rear-end collision with defendant's car); *Bowers v. Norfolk Southern Corp.*, 537 F.Supp.2d 1343, 1375-378 (M.D.Ga. 2007) (denying plaintiff's motion to exclude opinion testimony of defendant's biomechanical engineer regarding effects of locomotive generated vibration on human body), *aff'd*, 300 Fed.Appx. 700 (11th Cir. 2008).

Here, Defendants contend Dr. Calabrese's opinions are not factually based because Dr. Calabrese did not review photographs of the vehicles involved in the collision, Dkt. 30 at 8, or relevant accident reports, *id.*, and assumed Plaintiff was thrown about inside her car striking her head during impact, which, according to Defendants, differed from Plaintiff's deposition testimony.  Dkt. 30 at 9-10.  However, contrary to Defendants' assertions, Plaintiff testified at her deposition that she experienced lateral movement while reacting to the collision including striking her head on the driver side door.  *See* Dkt. 29-9 at 8 (Plaintiff's description of her car swaying while Plaintiff attempted to regain control and that Plaintiff felt pain when her head hit driver side door window); Dkt. 29-9 at 15 (Plaintiff's testimony confirming plaintiff's head hit side door). Dr. Calabrese also explained that treating physicians need not examine photographs of vehicles involved in a patient's car crash or related accident reports in order to competently diagnose a patient's injuries as a primary care physician, including an opinion whether such injuries were caused by a collision as described by patient, and proper treatment.  Dkt. 34 at 3-4.  Moreover, any assumptions Dr. Calabrese may have made, such as Plaintiff's involuntary sideways movements inside the car as a result of the collision, go to the weight of his testimony not its admissibility.  *See Robinson*, 544 Fed.Appx. at *30 (quoting *Boucher*, 73 F.3d at 21).  Additionally, in forming his opinion,

Dr. Calabrese relied on objective medical tests including Plaintiff's diagnostic X-rays and  MRIs which indicated Plaintiff had sustained injuries to her cervical spine and right shoulder (rotator cuff and labral tear), Dkt. 46 at 4, and his over 14 years of experience in treating patients suffering from the effects of auto-related collisions, undisputed by Defendants.  Such extensive experience by a physician satisfies the requirements of Rule 702.  *See* Advisory Committee Notes to 2000 Amendments to Rule 702 ("Nothing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.  (citing caselaw).  *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."))  Thus, even if Dr. Calabrese did not specifically elaborate how his training as a physician in the well-understood physical reasons why certain common outside trauma such as automobile crashes can adversely impact the human body, Dr. Calabrese's extensive experience in evaluating the injuries and causes of such injuries of patients, like Plaintiff, involved in auto crashes is a sufficient predicate under Rule 702 warranting admissibility of his opinions.  *See Flowers*, 2005 WL 2787101, at *7 (recognizing sufficient indicia of reliability under *Daubert* for treating physician's opinion that plaintiff's fall from collapsing ladder aggravated plaintiff's preexisting back problem based on physician's application of "routine and accepted medical practices to the diagnosis and treatment of a [plaintiff]"

and the heightened level of "accountability on a practicing physician" under state law, in contrast to the opinion of a non-treating retained medical expert) (bracketed material added).

Finally, while Defendants argue that it is improper for an expert to rely on a patient's absence of complaints, which conceivably could arise from prior injuries, as a basis for the expert's opinion that the subsequent subject car crash caused plaintiff's current injuries, Dkt. 71 at 4, in this case Defendants point to nothing in Plaintiff's X-ray or MRIs which evidence any pre-existing conditions such as chronic degenerative disc disease or prior injuries, *compare Cooper,* 549 Fed.Appx. at 966; *Watson-Tobah*, 2014 WL 6865713, at **14-15, as a potential cause of Plaintiff's diagnosed shoulder and cervical disc injuries.  Significantly, Defendants do not suggest that Plaintiff's statements to her treating physicians that she had experienced no pain in her spinal area prior to the collision, Dkt. 29-7 at 68, was fabricated, and assumptions made by experts or reliance upon inaccurate information received from a patient does not preclude admissibility but, instead, goes to the weight to be accorded to the physician's opinion. *See Lee Valley Tools, Ltd.*, 288 F.R.D. at 267.  Thus, Dr. Calabrese's opinions regarding Plaintiff's injuries and their cause are sufficiently grounded on the facts – Plaintiff's testimony regarding the sequence of events as related to her physician by Plaintiff when seeking treatment, the absence of complaints by Plaintiff prior to the collision, and the results of fairly contemporaneous, objective medical tests – two X-rays and two MRIs – and are not based on speculation or mere temporal proximity as Defendants maintain.  Given that objective medical tests, particularly Plaintiff's MRIs, taken approximately 60 days after the collision, tend to confirm Dr. Calabrese's opinion

as to the cause of Plaintiff's injuries, Dkt. 34 at 3 ("the February 7, 2007 motor vehicle

accident was the direct cause of Ms. Franz's injuries"), and the complete absence of

any indication Plaintiff may have suffered any trauma causing spinal injury in the period

before or following the collision, based on such tests and his extensive, 14 years,

experience, also undisputed by Defendants, in treating patients involved in auto

collisions demonstrates Dr. Calabrese's opinion regarding the causal relationship of the

collision with Plaintiff's spinal and shoulder injuries is not based solely on a temporal

relationship between the accident and Plaintiff's diagnosed injuries, nor is it based on

speculation as Defendants assert.  Dkt. 30 at 9 (citing *Washburn v. Merck & Co.*, 213

F.3d 627 at *2 (2d Cir. 2000) ("*Washburn*") (affirming district court's rejection of

plaintiff's medical expert opinion that defendant's German measles vaccine caused

plaintiff's arthropathy, arthralgia and chronic fibromyalgia in the absence of objective

scientific support where experts relied primarily on the plaintiff's development of

symptoms shortly after receiving the vaccine)); *DeRienzo v. Metro Transp. Auth*, 694

F.Supp.2d 229, 233 (S.D.N.Y. 2010) ("*DeRienzo*") (rejecting plaintiff's medical expert's

testimony that hemorrhaging of unknown tumor on plaintiff's pituitary gland was caused

by surgery on  plaintiff's spine required as a result of plaintiff's slip and fall on

defendant's property where available medical research showed several potential causes

other than the surgery for such hemorrhage and plaintiff's expert unable to exclude such

other potential causes thus relying only on close temporal relationship – that

hemorrhage occurred while plaintiff was in post-surgical recovery – to establish that

surgery was proximate cause of hemorrhage).  In the instant case, Plaintiff's

contemporaneous complaints of shoulder and back pain to Dr. Calabrese, confirmed by

the X-ray and MRI results two months later, and the absence of any apparent alternative causes for Plaintiff's complaints which Plaintiff denied having prior to consulting Dr. Calabrese, demonstrate Dr. Calabrese's opinion that Plaintiff's shoulder and cervical injuries resulted from the collision do not rely exclusively on a close temporal relationship found insufficient to support admissibility of a treating physician's opinion as to causality in *Washburn* and *DeRienzo*.

Treating physicians are expected to obtain and rely upon a patient's history of complaints or the lack thereof in making a diagnosis including the cause of the patient's current complaints and course of treatment. *See McCullock*, 61 F.3d at 1044 (expert treating physician may testify as to the cause of plaintiff's medical problem based on, *inter alia*, plaintiff's "medical history"); *Geary*, 2016 WL 1252768, at *3 (treating physician may testify as an expert as to causation of plaintiff's specific spinal injury resulting from rear-end collision (citing cases)); *Flowers*, 2005 WL 2878101, at *6 ("subjective reports of pain and other symptoms by a patient are an important part of a physician's examination, and doctors routinely rely on such statements (citing Fed.R.Evid. 803(4))). Moreover, in contrast to the instant case, the causation question in *Washburn* and *DeRienzo* both arose in the context of unusually complex medical problems – a reaction to a vaccine (*Washburn*) and an unanticipated tumor on a pituitary gland (*DeRienzo*) – not, as in this case, common soft-tissue and spinal injuries allegedly suffered during an auto collision, a form of outside physical trauma upon a patient and an example of an "ordinary" case which does not require rigid adherence to the methodology of Rule 702. *See Flowers*, 2005 WL 2787101 at **6-7 (insistence of use of scientific method to support expert opinion not applicable where relationship

between the circumstances of plaintiff's trauma and nature of plaintiff's injuries readily apparent); *see also Michalowski*, 387 F.Supp.2d at 217 (requirement that expert apply differential etiology method to issue of causation in connection with injuries related to collision more applicable to causation of injuries allegedly caused by exposure to environmental toxins).  The court also finds significance in the fact that in support of Defendants' motion Defendants do not cite to a single case involving an auto collision where a plaintiff suffered spinal and soft-tissue injuries similar to Plaintiff's and the court excluded under Rule 702 the testimony of plaintiff's treating primary care physician, as well as treating orthopedic surgeons, regarding causation, and the court's own research found only two cases, *Cooper*, 539 Fed.Appx. at 966, where the court upheld such preclusion because plaintiff's witnesses failed to consider alternative causes apparent in the record, such as plaintiff's obesity, pre-existing back pain, degenerative disc disease, and a prior accident, *id.* at 966,[5] and *Watson-Tobah*, 2014 WL 6865713, at **14-15, involving a nearly imperceptible low-impact rear-end collision, where plaintiff's treating physicians were not orthopedic surgeons and the physicians failed to consider plaintiff's pre-existing injuries that were apparent in the record.

Finally, although not asserted by Defendants as an objection to Dr. Calabrese, *see* Dkt. 71 at 5 ("Defendants have not challenged the qualifications of these Individuals

---

[5]   The undersigned also declines to apply *Cooper* as the court in that case required plaintiff's treating physicians and biomechanical expert to strictly apply a scientific methodology such as a differential etiology and rejected reliance on the biomechanical expert's extensive – 40 years – of experience as a qualification for admissibility under Rule 702, contrary to controlling caselaw in this Circuit.  *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042-43 (2d Cir. 1995) (plaintiff's work-place hazards consulting engineer expert's "extensive practical experience" qualified expert to testify that plaintiff worked within the "breathing zone of the glue fumes" created by exposure to defendant's commercial glue; plaintiff's treating otolaryngologist qualified to opine plaintiff's exposure to defendant's glue fumes caused plaintiff's throat polyps and respiratory problems).  The court's rejection of plaintiff's expert opinion as to causation also appears to be at odds with the Supreme Court's acceptance of an expert's experience as the basis for an opinion regarding causation.  *See Kumho Tire Co.*, 526 U.S. at 151-52 (accepting that Rule 702 permits an expert to "draw a conclusion from a set of observations based on extensive and specialized experience.")

[Plaintiff's physicians]"), unlike Drs. Graham and Cameron Huckell, that Dr. Calabrese is concededly not a specialist in shoulder and spinal injuries, is not a bar to admissibility of Dr. Calabrese's proffered opinion; rather, his lack of specialty credentials such as being a board certified orthopedic surgeon, goes to the weight to be accorded his testimony by the trier of fact. *See Pages-Ramirez v. Ramirez-Gonzalez*, 605 F.2d 109, 114 (1st Cir. 2010) (medical specialist testimony may be entitled to greater weight but is not prerequisite to admissibility (citing cases)); *Ortiz-Oliveres v. United States*, 2012 WL 3776997, at *1 (D.P.R. Aug. 29, 2012) (same (citing cases)); *Gilks v. Olay Co., Inc.*, 30 F.Supp.2d 438, 444 (S.D.N.Y. 1998) (opinion testimony by plaintiff's non-specialist cardiologist that plaintiff's use of defendant's product may have caused plaintiff's skin rash insufficient to avoid summary judgment). Further, as Dr. Graham Huckell and Dr. Cameron Huckell are board certified orthopedic surgeons with over 18 years and 19 years of experience, Dkt. 43; Dkt. 29-4 at 14, and Dr. Zair Fishkin is an orthopedic surgeon, with over 15 years of experience, Dkt. 56, with a doctorate in mechanical engineering and a bachelor's degree in biomechanics, their testimony directed to Plaintiff's injuries and their causation from the collision qualifies as expert testimony admissible pursuant to Rule 702 as based on sufficient facts and without a requirement to articulate specific methodology such as differential etiology analysis employed by these physicians in arriving at their diagnoses and opinions. *See McCullock*, 61 F.3d 1044 (alleged "faults" in treating physician's use of differential etiology subject to cross-examination, not a bar to admissibility); *Flowers*, 2005 WL 2787101, at *7 (use of four *Daubert* factors "not helpful" where treating physician expert witness has "applied routine and accepted medical practices to the diagnosis and treatment of a patient").

Nor is there any basis for Defendant's assertion, Dkt. 71 at 6, that Dr. Cameron Huckell offered "vague and generalized" opinions regarding causation. To the contrary, a fair reading of Dr. Huckell's deposition testimony demonstrates he specified that Plaintiff's lateral whip-lash movements following the impact, including Plaintiff's head striking the driver-side window, caused Plaintiff's disc protrusions which required surgery. *See* Dkt. 29-6 at 45-46; 48-49. This is also true with respect to Dr. Graham Huckell's opinion as to the cause of Plaintiff's shoulder injuries. *See* Deposition Testimony of Dr. Graham Huckell, Defendant's Exh. 5 at 40-41. More specifically, Defendants do not dispute that a rotator cuff injury or a shoulder labral tear is inconsistent with a sudden lateral whip-saw-like movement, *i.e.*, lateral acceleration, experienced by a person in an auto collision such as the instant one. While Defendants attempted to raise such an issue in examining Dr. Graham Huckell with respect to the presence of some degenerative changes in Plaintiff's AC joint, Dkt. 29-5 at 54, significantly, Dr. Huckell's opinion was that Plaintiff suffered a tear of Plaintiff's right shoulder superior labrum, *id.* at 43, not her AC joint, *see* Discussion*, supra* at 3, and the record is devoid of any indication Plaintiff experienced other trauma such as a work-related accident or auto crash or degenerative condition relevant to Plaintiff's shoulder or cervical problems either before or after the collision. While Defendants assert Dr. Huckell failed to exclude other possible causes for Plaintiff's labrum tear, Dkt. 71 at 6, a fair reading of Dr. Huckell's testimony indicates that Dr. Huckell explained that a rapid movement of Plaintiff's shoulders following the trauma of the impact at 40-45 mph with Defendant's truck caused Plaintiff's shoulder injury and no other possible causes such as degenerative factors or a dislocation. Dkt. 29-5 at 43-45.

This opinion is consistent with that of Dr. Fishkin, an orthopedic physician with a doctorate in mechanical engineering and education in bioengineering, who testified that despite the possibility that Plaintiff may have had some mild degeneration in her C6-C7 cervical spine are prior to the collision, the collision resulted in a "large herniation" of Plaintiff's C6-C7 cervical disc.  Dkt. 29-7 at 127.  Defendants' contention that Dr. Fishkin failed to make appropriate "calculations" as to the forces applied to Plaintiff during the impact, Dkt. 30 at 16, is also incorrect.  In his report, Dr. Fishkin specified that he determined that in reaction to the collision Plaintiff experienced "lateral accelerations of 0.5 – 1.0G . . . and as high as 2 – 2.5," Dkt. 58-9, based on his expertise in the fields of biomedical and mechanical engineering, expertise not contested by Defendants. Defendants' other asserted deficiencies in the basis for Dr. Fishkin's  opinions such as his failure to examine photographs of the vehicles involved in the collision, accident reports, details regarding the actual roadway condition and measurements of lateral movements of Plaintiff's vehicle upon impact immediately following the collision, Dkt. 30 at 14, and Dr. Fishkin's "assumption" that Plaintiff's vehicle actually "fishtailed" as a result of the collision, Dkt. 30 at 16, go to the weight to be accorded Dr. Fishkin's opinion, not its admissibility.  *See McCullock*, 61 F.3d at 1043 (alleged "shortcomings" in expert's knowledge of relevant facts go to "weight and credibility" to be accorded to testimony not admissibility); *Robinson*, 544 Fed.Appx. at 32 (expert's unsupported assumptions go to weight, not admissibility).  In fact, Dr. Fishkin, in response to Defendants' questions, testified that Plaintiff experienced disc herniations at her C4-C5, C5-C6, and C6-C7, as a result of Plaintiff's "fishhook maneuver" in reaction to the collision, Dkt. 29-7 at 81, *i.e.*, rapidly turning 45° or more, Dkt. 29-7 at 81-82, causing

"peak . . . lateral acceleration" of Plaintiff's upper body of up to 2.5 times greater than the movement of her vehicle creating a force upon Plaintiff of up to 2.5G.  Dkt. 29-7 at 85, 86, 88, "contributing to the [Plaintiff's] pathology that we've seen."  *Id.* at 102. Additionally, Dr. Fishkin's analysis of the cause of Plaintiff's injuries was based, in part, on his review of the accident report of the collision.  Dkt. 29-1 at 13.  Thus, a reasonable degree of scientific fact supports Dr. Fishkin's opinion relating to causation.  Further, as discussed, Discussion, *supra*, at 11-12, 17, Defendants' objection ignores the substantial experience of Plaintiff's physicians in diagnosing injuries related to collisions and their respective causal relationship, obviating the need for overly rigid requirements for detailed explanations of underlying scientific methodologies.  *See McCullock*, 61 F.3d at 1043 (plaintiff's treating otolaryngologist's extensive experience permitted his expert testimony regarding plaintiff's "throat ailment and its causes") (citing cases). Further, Defendants' contention that an expert's opinion fall within the expert's competence based on the experience, Dkt. 30 at 7 (citing caselaw), does not support preclusion here as the opinions of Plaintiff's physicians with respect to causation are well-within their competence as physicians.

In short, in the present era, the practice of medicine, including orthopedic medicine, and the ability of physicians to offer opinions on the nature and cause of a patient's injuries, is not based on "junk science."  In this case, the extensive experience of Plaintiff's physicians, particularly Plaintiff's orthopedic surgeons, in treating patients like Plaintiff involved in an auto collision together with objective medical tests corroborating Plaintiff's injuries and the absence, as part of a routine medical history taken by the physicians, of Plaintiff's prior complaints or apparent pre-existing causes or

conditions, reasonably assure Plaintiff's treating physicians' opinions regarding

causation are factually grounded and not based on the physicians' *ipse dixit.*  Accepting

Defendants' arguments to deny admissibility under Rule 702 in this case would amount

to an unnecessary insistence that treating physicians explain how the body of their

medical and specialized surgical training and years of experience diagnosing and in

treating patients with similar complaints constitute a scientific methodology, well beyond

the minimum requirements of Rule 702 as recognized by the courts in similar

circumstances.  Accordingly, the court finds in its discretion the experts' opinions of Dr.

Calabrese, Dr. Graham Huckell, Dr. Cameron Huckell, and Dr. Zair Fishkin, Plaintiff's

treating physicians in dispute, are admissible and a further evidentiary hearing to

address the issue as Defendants alternatively request, Dkt. 29-1, is unnecessary.


## CONCLUSION

Based on the foregoing, Defendants' motion (Dkt. 29) is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  June 16, 2016
             Buffalo, New York